## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| COALITION OF AMERICAN MANUFACTURERS OF MOBILE ACCESS EQUIPMENT,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>        Defendant;<br><br>   and<br><br>ZHEJIANG DINGLI MACHINERY CO., LTD.,<br><br>        Defendant-Intervenor. | Before: Hon. M. Miller Baker, Judge<br><br>Court No. 22-00152 |

### PLAINTIFF'S COMMENTS IN SUPPORT OF REMAND DETERMINATION

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Theodore P. Brackemyre, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Coalition of American Manufacturers of Mobile Access Equipment*

Dated: August 11, 2025

Ct. No. 22-00152                                    **PUBLIC DOCUMENT**

# TABLE OF CONTENTS

PAGE

I.    Introduction..................................................................1

II.   Summary of Argument.....................................................3

IV.   Argument.....................................................................6

    A.   Commerce Reasonably Relies Solely on Maersk
        Data to Value Ocean Freight....................................6

    B.   Commerce Reasonably Relies on Non-Raw Steel
        Data to Value Certain Fabricated Steel
        Components....................................................14

V.    Conclusion..................................................................20

Ct. No. 22-00152                                      PUBLIC DOCUMENT

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Jiangsu Zhongji Lamination Materials Co. (HK) v. United States*,
    No. 21-00138, 2023 WL 3863201 (Ct. Int'l Trade June 7,
    2023) ................................................................................................ 10

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................ 2

### Administrative Materials

*Certain Mobile Access Equipment and Subassemblies Thereof
    From the People's Republic of China*, 87 Fed. Reg. 9,576
    (Dep't Commerce Feb. 22, 2022) ......................................................... 6

**PUBLIC DOCUMENT**

## <u>GLOSSARY</u>

| Abbreviation | Term |
|---|---|
| AUV | Average Unit Value |
| Coalition or Plaintiff | Coalition of American Manufacturers of Mobile Access Equipment |
| Commerce | U.S. Department of Commerce |
| Defendant | United States |
| Defendant-Intervenor or Dingli | Zhejiang Dingli Machinery Co., Ltd. |
| HS | Harmonized System |
| HTS | Harmonized Tariff Schedule |

**PUBLIC DOCUMENT**

## I.    INTRODUCTION

On behalf of plaintiff in this action, the Coalition of American Manufacturers of Mobile Access Equipment ("Plaintiff" or "Coalition"), we hereby submit the following comments in support of the October 30, 2024 remand determination issued by the U.S. Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Court Remand Order, *Coalition of American Manufacturers of Mobile Access Equipment v. United States*, Consol. Court No. 22-00152, Slip Op. 24-66 (Ct. Int'l Trade May 31, 2024) (Oct. 30, 2024), ECF No. 74, Appx ___ ("Remand Determination"). These comments are filed in response to the submissions made before this court by defendant-intervenor Zhejiang Dingli Machinery Co., Ltd. ("Defendant-Intervenor" or "Dingli") on February 28, 2025 and defendant United States ("Defendant") on June 13, 2025. Def-Int. Dingli's Cmts. in Opp. to Remand Redetermination (Feb. 28, 2025), ECF No. 83 ("Def-Int. Remand Cmts."); Def.'s Cmts. in Supp. of Remand Redetermination (June 13, 2025), ECF No. 89 ("Def. Remand Cmts.").

For the reasons provided below, Plaintiff supports aspects of Commerce's remand analysis and asks the Court to sustain the Remand

**PUBLIC DOCUMENT**

Determination. Namely, Commerce properly relies on only Maersk data to value ocean freight in its surrogate value calculations. Commerce also appropriately finds that certain fabricated steel components used by Dingli should not be valued using data under Harmonized Schedule ("HS") subheadings covering primary or raw steel products. In finding as such, Commerce's determination properly responds to the opinion and remand order issued by the Court on May 31, 2024, *Coalition of American Manufacturers of Mobile Access Equipment v. United States*, Court No. 22-00152, Slip Op. 24-66 (May 31, 2024), ECF No. 69 ("Slip Op. 24-66") and Order (May 31, 2024), ECF No. 70 ("Remand Order"), and is otherwise in accordance with law and supported by substantial evidence, *see MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (noting that, in remand proceedings, the Court will sustain a determination from Commerce if it is "in accordance with the remand order" and is "supported by substantial evidence and {is} otherwise in accordance with law"). Accordingly, the Court should reject arguments to the contrary made by Defendant-Intervenor, and it should sustain the Remand Determination

## II.    SUMMARY OF ARGUMENT

The Remand Determination fully and appropriately responds to the Court's opinion and remand order, and it is otherwise consistent with law and supported by the record. *See* Remand Determination at 6-13, Appx ___. *See also generally* Slip Op 24-66; Remand Order. On remand, the Court instructed Commerce to address its valuation of ocean freight and fabricated steel component costs. Remand Order at 1-3. Commerce properly addresses both issues in its remand analysis. *See* Remand Determination at 6-13, Appx ___. Thus, the Remand Determination should be sustained by the Court.

To start, Commerce appropriately relies only on Maersk data to value ocean freight. *Id.* at 6-9, Appx ___. As part of this remand proceeding, and consistent with the Court's instructions, the Maersk ocean freight data on the record were properly re-designated as public information. *Id.* at 6-7, Appx ___. This led Commerce to correctly find that the public Maersk data are superior to the limited Descartes, Drewry, and Freightos data previously relied upon. *Id.* at 7-9, Appx ___. As such, Commerce correctly uses only Maersk data to value ocean freight in the Remand Determination.

3

**PUBLIC DOCUMENT**

The arguments raised by Defendant-Intervenor against Commerce's reliance on the Maersk data lack merit and should be rejected. *See* Def-Int. Remand Cmts. at 2-27. First, Defendant-Intervenor fails to acknowledge that Commerce comprehensively evaluated each of the multiple ocean freight data sources on the record before ultimately choosing to rely on the Maersk data. *See id.* at 3. Second, Defendant-Intervenor erroneously argues that the Maersk data are not reliable because they are based on price quotes. *Id.* at 4-13. Third, contrary to Defendant-Intervenor's claims, the relatively low container weights underlying the Maersk data are not anomalous and do not detract from the reliability of the Maersk data. *Id.* at 24-27. Fourth, Defendant-Intervenor mistakenly argues that Commerce has improperly relied on the route-specificity of the Maersk data in selecting its ocean freight surrogate value data. *Id.* at 13-16. Fifth, Defendant-Intervenor is wrong to claim that Commerce mistakenly relies on the reporting of incidental ocean freight charges in choosing ocean freight surrogate value data. *Id.* at 17-24.

Additionally, consistent with the Court's opinion and remand order, Commerce appropriately revalues many of Dingli's fabricated steel

components in its remand analysis to no longer value these inputs under HS subheadings that are specific to primary or raw steel products. Remand Determination at 9-13, Appx ___. In doing so, Commerce correctly finds that the record is clear that Dingli purchased fabricated steel components instead of raw steel products. *Id.* at 10-12, Appx ___. And Commerce rightly points to Dingli's own submissions, which acknowledge that the company never purchased steel plates and sheets or did any in-house processing. *Id.* at 11, Appx ___. Therefore, Commerce properly concludes that Dingli's purchased steel inputs were fabricated and that it would be inappropriate to value them as primary or raw steel products.

Defendant-Intervenor's arguments against Commerce's revaluation of Dingli's fabricated steel components are without merit and should be rejected. *See* Def-Int. Remand Cmts. at 27-35. First, Defendant-Intervenor's arguments are based on the incorrect assumption that the inputs purchased by Dingli were raw steel and not fabricated steel components. *See id.* Second, the court precedent discussed by Defendant-Intervenor does not require Commerce to have undertaken a different analysis in valuing these inputs. *See id.* at 30-32. Third, and

lastly, Defendant-Intervenor unduly focuses on differences in average unit value ("AUV") between the Harmonized Tariff Schedule ("HTS") categories relied on by Commerce, which are not determinative in this context. *Id.* at 33-35.

## IV.  ARGUMENT

### A.  Commerce Reasonably Relies Solely on Maersk Data to Value Ocean Freight

In the Remand Determination, Commerce properly revises its surrogate value calculations to only rely on the Maersk ocean freight data provided by the Coalition. Remand Determination at 6-9, Appx ___. In the underlying investigation, Commerce chose not to use the Maersk data submitted by the Coalition because the data were treated as confidential due to shipping route information that had been previously considered confidential by Dingli. *See id.* at 6-7, Appx ___; Issues and Decision Memorandum accompanying *Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China*, 87 Fed. Reg. 9,576 (Dep't Commerce Feb. 22, 2022) (final affirmative deter. of sales at less than fair value) at 8-13, Appx ___. However, following the Court's opinion and remand order, in this remand proceeding, Commerce asked Dingli to withdraw its designation

of this information as confidential, which Dingli did without objection.
Remand Determination at 6-7, Appx ___. And the Coalition
correspondingly resubmitted and redesignated its Maersk ocean freight
surrogate value information as public data. *Id.* at 7, Appx ___. With this
information now publicly on the record, Commerce appropriately
reasons that the Maersk data are probative, public ocean freight
information and are superior to the limited Descartes, Drewry, and
Freightos data previously submitted by Dingli. *Id.* at 7-9, Appx ___.

In its remand analysis, Commerce properly evaluates "all publicly
available information concerning the valuation of ocean freight costs for
Dingli." *Id.* at 7, Appx ___. This includes the Descartes, Drewry, and
Freightos data submitted by Dingli. *See id.* at 7-9, Appx ___. In
particular, consistent with the Court's remand order and prior agency
findings, Commerce finds that that the Maersk ocean freight data are
publicly available, reliable, and preferrable to all other sources. *Id.* at 7,
Appx ___. In making that determination, Commerce reasons that the
Maersk data are the only information on the record that match Dingli's
predominant ocean shipping route for mobile access equipment. *Id.* at 8,
Appx ___. And the agency determines that Maersk is the only data

source that provides ocean freight data that includes all incidental ocean freight charges. *Id.* at 9, Appx ___. As a result, Commerce correctly relies exclusively on the Maersk data to calculate ocean freight surrogate values in the Remand Determination. *Id.* at 7-9, Appx ___.

Nevertheless, Defendant-Intervenor insists that Commerce's remand analysis and its use of the Maersk data is unreasonable and should be rejected. *See* Def-Int. Remand Cmts. at 2-27. However, Defendant-Intervenor's arguments are misplaced in several respects. *See* Def. Remand Cmts. at 13-44; Remand Determination at 14-22, Appx ___. In particular, Plaintiff highlights below several of the key flaws in Defendant-Intervenor's argument while otherwise incorporating by reference the arguments made by Defendant on this issue.

*First*, as an initial matter, Defendant-Intervenor fails to recognize that Commerce did conduct a comprehensive analysis of the multiple ocean freight data sources on the record before ultimately choosing to rely exclusively on the Maersk data. *See* Def-Int. Remand Cmts. at 3; Remand Determination at 6-9, 14-22, Appx ___. In the Remand Determination, Commerce makes clear that it is evaluating "all publicly available information concerning the valuation of ocean freight costs for

Dingli." Remand Determination at 7, Appx ___. And Commerce

identifies and explains key differences between the Maersk data and

the Descartes, Drewry, and Freightos data in various contexts,

including why those differences led to its ultimate decision to rely solely

on the Maersk data. For example:

- "Maersk data is the best available information to value ocean
  freight because it . . . offers ocean freight data that includes all
  incidental ocean freight charges, unlike the Descartes, Drewry,
  and Freightos data." *Id.* at 14, Appx ___.

- "Nowhere does Dingli dispute that the Maersk freight data is
  more specific than the Descartes, Drewry, and Freightos freight
  data." *Id.* at 17, App ___.

- "{T}he Maersk data is specific to Dingli's actual shipping routes
  (and specific to each month corresponding to the {period of
  investigation}), which makes the Maersk freight data superior to
  the Descartes, Drewry, and Freightos freight data in terms of
  route specificity." *Id.* at 17-18, Appx ___.

As these examples show, Defendant-Intervenor's overarching

argument that Commerce failed to conduct a "faithful side-by-side

conjunctive analysis of all four data sets" is entirely without merit. Def-

Int. Remand Cmts. at 3 (emphasis removed). Indeed, it is not clear what

more Defendant-Intervenor would have Commerce do. As is the case

with many of its arguments, Defendant-Intervenor appears to ascribe a

methodological error (where none exists), when the agency has simply

reached a reasonable conclusion to which Defendant-Intervenor
disagrees.

*Second*, Defendant-Intervenor wrongly argues that the Maersk data
are not reliable because they are price quotes. *Id.* at 4-13. *See also* Def.
Remand Cmts. at 16-25; Remand Determination at 15-16, Appx ___. In
its remand analysis, Commerce reasons that "the fact that the Maersk
data reflects price quotes and the Descartes data represent
consummated transactions is not dispositive as to the reliability of the
Maersk data in valuing ocean freight." Remand Determination at 15-16,
Appx ___. In fact, in doing so, the agency points to other circumstances
where the court has found it "reasonable for Commerce to choose price
quotes over broad data sets." *Id.* at 15, Appx ___. As Defendant
explains, "Commerce expresses a *preference* for data based on actual
transactions rather than price quotes, but that preference is not a
bright line rule" and it "may be overcome if other considerations weigh
towards price quote data as the best available information." Def.
Remamd Cmts. at 16-17 (citing *Jiangsu Zhongji Lamination Materials
Co., (HK) v. United States*, No. 21-00138, 2023 WL 3863201, at *10 (Ct.
Int'l Trade June 7, 2023). Here, Commerce clearly explains how the

record supports relying on the Maersk price quote data because of its superiority on a variety of factors. In arguing otherwise, Defendant-Intervenor effectively asks Commerce to do what it initially chastises the agency for doing (*i.e.*, base its determination on a single factor and not a comprehensive, holistic analysis). *See* Def-Int. Remand Cmts. at 8.

*Third*, Defendant-Intervenor is incorrect to argue that the container weight information underlying the Maersk data is anomalous and thus makes the data unreliable. *Id.* at 24-27. *See also* Def. Remand Cmts. at 25-30; Remand Determination at 21-22, Appx ___. Commerce is clear in the Remand Determination that the "record indicates that the Maersk source freight data are for a specified quantity of goods as opposed to a theoretical 'container load' of merchandise." Remand Determination at 21, Appx ___. That is, it is not inconsistent or anomalous for actual container loads to have lower weights than the theoretical maximum of container freight data. Indeed, as Defendant puts it: "Dingli appears to conflate *payload* with *container capacity* and, as a result, assumes that it is possible to load each container to capacity." Def. Remand Cmts. at 26. Further, as Defendant recognizes, "Dingli also seems to conflate

weight with volume," failing to appreciate that an actually full container by volume may not reach its weight maximum. *Id*. at 26 n.3.

*Fourth*, Defendant-Intervenor mistakenly claims that Commerce has not supported its preference for route-specificity in selecting ocean freight data. Def-Int. Remand Cmts. at 13-16. *See also* Def. Remand Cmts. at 30-37; Remand Determination at 17-18, Appx ___. In doing so, Defendant-Intervenor acknowledges that the Maersk data are the only actual route-specific data on the record, focusing instead on explaining on how other data sources are not that dissimilar from the route-specific Maersk data. *See* Def-Int. Remand Cmts. at 13-16. That line of argument falls flat. As Defendant reasons, "consistent with its practice to use ocean freight surrogate value data that is specific to port combinations used by a respondent, Commerce selected the only data set that is route-specific—the Maersk data." Def. Remand Cmts. at 32 (citing Remand Determination at 17, Appx ___).

Defendant-Intervenor does not contest that the Maersk data are the most route-specific data but rather claims that other data are "nearly as route-specific" and thus should be part of the agency's analysis. Def-Int. Remand Cmts. at 14. Defendant-Intervenor argues that Commerce

makes a "binary determination" in choosing the Maersk data over other potential data sources. *Id.* at 15. But that is not what Commerce is doing. Defendant-Intervenor ignores that Commerce finding the Maersk data to be superior to the Descartes, Drewry, and Freightos data in terms of route specificity does not change the fact that it compares the relative strengths and weaknesses of each data set across a variety of factors, as highlighted above. *See* Def. Remand Cmts. at 33.

*Fifth*, and finally, Defendant-Intervenor is wrong to claim that Commerce has not supported its reliance on the reporting of incidental ocean freight charges in choosing ocean freight surrogate value data. Def-Int. Remand Cmts. at 17-24. *See also* Def. Remand Cmts. at 37-44; Remand Determination at 18-21, Appx ___. Defendant-Intervenor's argument is largely based on its speculation that the Maersk data *may* include costs associated with brokerage and handling, which are valued separately. *See* Def-Int. Remand Cmts. at 18-19. However, Commerce plainly disagrees with that factual conjecture, noting that it "carefully evaluated the record and finds that it cannot definitively conclude that the brokerage and handling expenses include the incidental ocean freight charges that are included in the Maersk source data." Remand

Determination at 18, Appx ___. Therefore, Commerce appropriately finds there to be no double-counting concern and reasons that the Maersk data are the best available information. As explained by Defendant, Commerce's finding in this respect is consistent with the agency's past practice, contrary to claims raised by Defendant-Intervenor. *See* Def. Remand Cmts. at 40-44.

In short, Defendant-Intervenor's arguments against Commerce's use of the Maersk data to value ocean freight are not persuasive and should be rejected. The Court should sustain Commerce's determination that the Maersk is the best available information and should be relied on as the only data source to value ocean freight surrogate values. Commerce's ocean freight remand analysis adheres to the Court's remand order and is otherwise consistent with law and supported by the record.

### B.    Commerce Reasonably Relies on Non-Raw Steel Data to Value Certain Fabricated Steel Components

In the Remand Determination, Commerce correctly changes its valuation of certain of Dingli's fabricated steel components to no longer value them based on data under HS subheadings limited to primary or raw steel. Remand Determination at 10-12, Appx ___. In the underlying

investigation, Commerce valued various steel inputs categorized as "minor fabricated components" under several HS chapters that cover primary or raw steel products. *Id.* at 9-10, Appx ___. Commerce did so after finding that the Coalition had not supported its claim that Dingli was purchasing fabricated steel components, instead of raw steel products, such as steel plate. *Id.* at 10, Appx ___. Plaintiff subsequently challenged this aspect of Commerce's final determination, and the Court agreed, finding the agency's determination to be "internally inconsistent" in this respect and instructing Commerce to reconsider its valuation of these fabricated inputs. *Id. See also* Slip Op. 24-66 at 19.

In accordance with the Court's opinion and remand order, in its remand analysis, Commerce appropriately revalues many of Dingli's fabricated steel components and no longer values them under HS subheadings that are specific to primary or raw steel inputs. Remand Determination at 10-12, Appx ___. Conceding the internal inconsistency in its original analysis, Commerce properly analyzes whether the inputs in question were purchased as fabricated components or raw steel. *Id.* at 10-11, Appx ___. In doing so, Commerce finds that the record is clear that "these inputs are fabricated by Dingli's input suppliers, to varying

degrees, based on Dingli's specified dimensional requirements, for eventual incorporation into Dingli's {mobile access equipment} machines." *Id.* at 11, Appx ___. Thus, the agency rightly determines that "Dingli purchased minor fabricate{d} steel components as opposed to raw steel." *Id.*

Commerce further points to Dingli's own submissions, in which "Dingli never claimed that it purchased plates or sheets from suppliers and did in-house processing." *Id.* And, as the agency highlights, Dingli pointed to evidence summarizing "the degree of fabrication or processing" for its sourced material inputs. *Id.* Commerce also reasons that the act of fabrication itself "naturally transforms the 'essential nature' of primary steel material," making data under HS categories for fabricated steel unsuitable for valuing primary or raw steel. *Id.* at 12, Appx ___. Taken together, this leads the agency to rightly conclude that Dingli's steel inputs were fabricated and, as such, it would be inappropriate to value them as primary or raw steel products. *Id.* at 11-12, Appx ___.

Still, Defendant-Intervenor contends that Commerce's remand analysis is flawed and should be rejected. *See* Def.-Int. Remand Cmts. at

27-35. Defendant-Intervenor primarily argues that Commerce improperly applies a customs classification approach as opposed to the agency's standard practice in selecting HS categories for surrogate values. *See id.* at 29-33. However, Defendant-Intervenor misses the point in several respects. *See* Def. Remand Cmts. at 45-50; Remand Determination at 22-29, Appx ___.

*First*, Defendant-Intervenor's claim is based on the incorrect supposition that the inputs purchased by Dingli were raw steel and not fabricated steel components. *See* Def-Int. Remand Cmts. at 27-35. Every argument that Defendant-Intervenor tries to make flows from that faulty assumption. Yet, Commerce is unequivocal in its remand analysis in finding that "Dingli purchased minor fabricated steel components as opposed to raw steel because record evidence demonstrates that the inputs in question are fabricated by Dingli's input suppliers." Remand Determination at 23, Appx ___. Defendant-Intervenor does not refute that determination, focusing instead on supposed errors in Commerce's approach but never challenging the finding that the inputs in question are fabricated components, as opposed to raw steel. *See* Def-Int. Remand Cmts. at 27-35. If there was

any evidence on the record that these components were actually raw steel—and thus should be valued as such—then, presumably, Defendant-Intervenor would have made that argument. However, it did not, essentially conceding that Commerce properly values these inputs as fabricated components.

*Second*, the case law referenced by Defendant-Intervenor does not require Commerce to have undertaken a different analysis in valuing these inputs. *See* Def-Int. Remand Cmts. at 30-32. *See also* Def. Remand Cmts. at 47-48; Remand Determination at 24-26, Appx ___. Defendant-Intervenor repeatedly insists that Commerce's remand analysis is incongruent with the approach prescribed by the courts for selecting surrogate values. Def-Int. Remand Cmts. at 30-32. As explained by Defendant, though, the Remand Determination is consistent with prior court precedent and Commerce is not precluded from relying on customs classification-type analyses in selecting surrogate values. *See* Def. Remand Cmts. at 47-48. Further, it is notable that at no point does Defendant-Intervenor explain how, even under its preferred analytical framework, Commerce would have been required to find that the inputs in question were raw steel inputs and

not fabricated steel components. *See* Def-Int. Remand Cmts. at 27-35.
That is, even if Commerce should have taken a different approach to
evaluating these inputs (and, to reiterate, it was under no obligation to
do so), Defendant-Intervenor fails to argue that the agency would have
reached a different outcome.

*Third*, and lastly, Defendant-Intervenor improperly focuses on the
relative difference in AUVs between the HTS categories relied on by
Commerce. *Id.* at 33-35. Defendant-Intervenor primarily faults
Commerce for "unlawfully ignoring the AUVs attached to the HTS
headings and whether they correlated with the intrinsic values of the
upstream primary steel input and Dingli's purchased minor fabricated
inputs." *Id.* at 33. This argument ignores that a fabricated component is
necessarily going to have a higher value than its underlying primary
raw material. Commerce states in its remand analysis that, "although a
fabricated part and its input (*i.e.*, primary steel material) are both steel
materials, a fabricated part achieves a further value added to it by a
physical transformation." Remand Determination at 28, Appx ___. In
other words, a fabricated component should be expected to have a
higher AUV. In fact, as Defendant explains, "Dingli points to no flaws

with HTS 8431.20.90 other than its unsupported belief that the value is too high." Def. Remand Cmts. at 49.

In sum, Defendant-Intervenor's arguments in opposition to Commerce's revaluation of Dingli's fabricated steel components are unavailing and should be rejected. Instead, the Court should sustain Commerce's determination that certain Dingli inputs are fabricated steel components and should be valued as such. This finding follows the Court's remand order and is otherwise consistent with law and supported by the record.

## V.    CONCLUSION

For the reasons provided above, Plaintiff respectfully requests that the Court reject the arguments raised by Defendant-Intervenor and sustain Commerce's decisions in its remand analysis to rely solely on Maersk data to value ocean freight and to use non-raw steel data to value certain of Dingli's fabricated steel components. Accordingly, Plaintiff asks the Court to sustain the Remand Determination.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for the Coalition of American Manufacturers of Mobile Access Equipment*

Dated: August 11, 2025

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiff's Comments in Support of Remand Determination, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 3,746 words.


*/s/ Timothy C. Brightbill*
(Signature of Attorney)

<u>Timothy C. Brightbill</u>
(Name of Attorney)

*<u>Coalition of American Manufacturers</u>*
*<u>of Mobile Access Equipment</u>*
(Representative Of)

<u>August 11, 2025</u>
(Date)